Cowen, J.
The appellant purcnased of Robert Anderson a bond and mortgage, made to secure $3000, advancing only $2600 ; and, at the time, took from Anderson and A. A. Remsen a bond of guaranty conditioned that the mortgagor should pay to the appellant the $3000, with the interest due on the mortgage. The chancellor held the transaction to be usurious, and, I am of opinion, rightly.
The appellant, in effect, took 4 contract and security for the repayment of more than $400 beyond the sum which he advanced, whereas he was entitled to that sum only, with interest *474 upon it at the rate of seven per cent, per annum for the time during which he should he obliged to wait for reimbursement.
There is no rule of construction by which the bond of guaranty can be said to import less than an obligation for the payment pf the whole sum due upon the mortgage.
This case seems to me within the very words of the statute of usury. That statute declares that no person shall directly or indirectly take or receive in money, goods or things in. action, or in any other way, any greater sum or greater value for the loan or forbearance of any mpney, &e. than at the rate of seven per cent, per annum ; and that all contracts or securities for more than that rate shall be void. (1 R. S. 760, 2d ed.) Had the legislature intended tp anticipate and condemn the precise transaction in question, they could scarcely have • done so in plainer words, without naming the parties.
It is said, here is the purchase of a chose in action, which is not usury. But there is more; not only a purchase, but security for the reimbursement of the purchase money, taken from the man tp whom it is advanced. A surety is also required to jpin with him. The naked purchase pf a chose in action is lawful; but a usurious transaction cannot be legitimated because a purchase happens to be associated with it. A man buys a horse, advancing one hundred dollars as the price, at the same time taking security that his money shall be repaid with more than lawful interest; and because he takes the horse as a purchaser, tie claims to hold the same relation to the other branch of the transaction. This is the length of the argument.
But it is said there was not any loan by the appellant. There was an advance by him of $2600, and security taken for the repayment of th,at sum with more than $400 besides. What is a loan within the meaning of the statute of usury *2 An advance of money upon a contract that it shall be returned in genere is clearly so. (Ord on Usury, 25 ; and see Byrne v. Kennifeck, Batty’s Rep. 269 ; Fereday v. Wightwick, 1 Taml. 250.) That the lender chooses to call it by another name, does not *475 change its nature. The result of the contract being a loan and an excess of compensation, no disguise, either by words or the form of the transaction, can change its character.- “We must,” says Lord Mansfield, “ get at the real nature and substance of the transaction 3 arid where the real transaction is a loan of money, the wit of man cannot find a shift to take it out of the statute.” (Floyer v. Edwards, Cowp. 114.) In Low v. Waller, (2 Dougl. 739,) he said : “ Experience taught the legislature, in more modern times, not to particularize specific modes of usury, because that only led to evasion; but to enact, generally, that no shift should enable a man to take more than the legal interest upon a loan. Therefore the only question in all cases like the present is, what is the real substance of the transaction, not what is the color and form.” In that case, a man wanting to obtain money, was induced to buy goods ivorth only 120/., on his bill of 200/. It professed to be a mere purchase and sale of goods at their full value. Yet Lord Mansfield said, “ it was impossible to wink so hard as not to see that there was no idea between the parties of any thing but a loan of money.” Any contrivance by Which more than seven' per cent, is obtained as a compensation of forbearahcfe on an advance of money, is a fraud upon the statute. It is usury in itself, by reason of the effect. Thp lender will not be permitted to argue that it may possibly be innocent. He may, to be sure, show that the obtaining more than a due.rate arose, in fact, from some mistake in the frame of the contract, or the like ; but it lies with him to do so. Without such an explanation, the law looks to the act and result only. The rule is, as laid down by Lord Tenter den, C. J.: “ Every man must be presumed to intend the natural and ordinary consequences of his own act.” (Haire v. Wilson, 9 Barn. & Cress. 643.) In the language of Golden, senator, “ We must interpret acts by their consequences 5 and must presume persons intended to produce the effects which naturally flow from their acts.” (Mackie v. Cairns, 5 Cowen, 573.) The severity with which the rule is applied in cases of usury, may be seen by the New-York Firemen’s Ins. *476 Co. v. Ely, (2 Cowen, 678, 705,) and The Bank of Utica v. Wager, (id. 712, 769.) The rule of these cases was affirmed by this court. (8 Cowen, 398.) The interest was there taken by Way of discount on the purchase of notes by a bank. The bank calculated the discount by a rule which gave them but a trifle more than seven per cent. Yet, as they were aware that the transaction would produce this trifle, their acts were received as'conclusive evidence of a usurious agreement. The court held they Could not escape this inference, except by showing that the result arose from a mistake of fact. (See 2 Cowen, 705.)
On the effect of selling a debt for less than its face, and guarantying its payment, no two men can disagree, for it is shown by mere computation. The substance of the transaction is thus stated by Pothier : “ If I sell you for 900 livres, a debt of 1000, which I engage to pay myself if the debtor does not, it evidently is the same thing as if you lend me 900 livres upon my engagement to return you 1000 at the end of a certain time.” And he pronounces this to be usurious. (Poth. Trait, du Contr. de Vente, Tome 2, pt. 6, ch. 4, art. 6, § 1.) Transactions like this have repeatedly been held usurious in England. (Massa v. Hauling, 2 Str. 1243 ; Lowes v. Mazzaredo, 1 Stark. Rep. 385 ; The King v. Ridge, 4 Price, 50 ; Chapman v. Black, 2 Barn. & Ald. 588.) In the last two cases the matter was deemed too plainly usurious to require that the question should be left to the jury. A sale out and out of the choses in action was pretended ; but the pretext, was held so unfounded as not to admit of doubt. No decision any where will be found to go the length now contended for by the appellant’s counsel * but many may be found against it. The case of Ruffin v. Armstrong, in North Carolina, (2 Hawks’ Rep. 411,) is a direct authority for declaring the transaction in question usurious, even though the respondent alone had guarantied the payment. There the plaintiff purchased a bond of the defendant at a discount of more than the legal rate of inter *477 est, the defendant endorsing the bond in a form which bound him to guaranty the payment of the whole money due upon it. Taylor, Ch. J. said : “ The character and substance of this transaction bespeak it to be a loan of money, although the parties constantly speak of a sale, and not a whisper is heard relative to a loan.” He further said, if it had been a sale in truth, the assignor would have had nothing to do but receive the price, and leave the assignee to obtain the money as he could from the obligors. The money was to be raised for the assignor’s benefit, and “ if he had meditated a sale of the bond, he would undoubtedly have withheld his endorsement. But by adding that to the bond, he Undertook on his part to repay the money which should be raised on it in the event of the obligor’s delinquency. This appears to me to be the unequivocal .characteristic of a loan, that the money is in all events to be repaid with interest by the borrower himself, or out of his funds.” He added, that a sale of the bond would have been on the sole credit of the obligors. All that is here said applies, mutatis mutandis, to the case before us. Had there been a mere sale of this bond and mortgage, the appellant would have been left to his remedy on the securities purchased, in which case it is not denied that the $400 might have been thrown off. The securities might have been of a doubtful character. But the appellant determined, over and above the security afforded him by the sale, to exact the guaranty both of the borrower and his friend, that, at all events, $3000 should be paid him for $2600. Suppose the appellant had advanced the $2600, and merely taken the bond of the respondent and his friend for $3000 ; no one would doubt of the transaction being usurious. This has been done. Is it then the less usurious because the appellant exacted another bond and a mortgage besides 1 If the true argument be that usury is lost in the greatness or stringency of the security, then indeed has the appellant been wronged by the chancellor. But Shylock has been much more wronged by the public estimation. If common sense, however, be the same both in North Carolina and New-York, no injustice has been done to either. *478 There is sometimes a boldness in urging usurious devices upon courts of justice, which would seem to' assume that, for the sake of giving them effect, the ordinary rules of legal discrimination are to be disregarded. By some indirection a man obtains more than seven per cent, per annum for the use of his money, or a security for more. Although in fact he has practiced that very extortion against his neighbor which the statute declares he shall not do directly nor indirectly, he qualifies the transaction by such definitions Or pretexts as he imagines are out of the words of the statute. He then seems to expect that these should be adopted in the office of legal construction; that the very words of the statute of usury, and the spirit of every law which sedulously guards against all evasion, should be forgotten, or that courts should wink as hard in order to protect the usurer as he himself did in the commission of the offence. An argument often urged is, that the statute is contrary to the rules of political economy. The code of McCulloch and Jeremy Bentham is invoked as of paramount authority. The customs of trade are adduced as another ground; nor can it be said that the course even of judicial authority has always proceeded entirely without the influence of such considerations. At a very early period interest was allowed to be taken in advance, in the name of discount. It was said that, if not allowed, every banker in London would be held guilty of usury. Some courts have allowed a factor to take more than legal interest on his advances, calling the excess by the name of commission. Men have been allowed to lend their paper on commissions which, thpugh nominally limited to the legal rate of interest, yet this being also allowed to increase in proportion , to the time the paper had to run, might amount to enormous usury. Nor has this court itself, perhaps, been entirely free from such inadvertencies. In Cram v. Hendricks, (7 Wend. 569,) it was held that a man might lend money, and take security of the borrower for one per cent, a month. Cram, wanting to raise money, applied by his agent to Hendricks. He discounted a note held by Cram, taking the one per cent, in ad *479 vanee. The borrower endorsed the note in blank, thus securing the principal sum both by his own name and that of the maker. For the one per cent., the note was available against the maker only. This court pronounced the transaction to be a sale of the note out and out, not a loan, and sustained an action against the endorser. In the course of the discussion, the policy of all laws against usury was very seriously questioned. It was going a great way to declare such a transaction as that a mere purchase. The defendant obtained an advance of money, and provided for its repayment with one per cent, per month for a certain time. In effect he secured the payment of usurious interest; and I am not aware of any other case going to sustain such a transaction, except Mazuzan v. Mead, (21 Wend. 285.) This adds no sanction to the principle of Cram v. Hendricks. The supreme court ruled the same way as this court did on what were believed to be equivalent circumstances, but on the express authority of a court having power to review the decision. I claim to understand the views of the justices of the supreme court too well to suppose them in favor of extending the principle of Cram v. Hendricks beyond its exact circumstances, comprehending the sale of negotiable paper valid in its cpncoction.
The case now before us is plainly distinguishable from Cram v. Hendricks, and the disposition which the chancellor has made of it is ably sustained by the argument of the supreme court of Kentucky, relied upon by him. (Yankey v. Lockheart, 4 J. J. Marsh. 276.) The case is, moreover, exactly in point.
It is suggested that Cram v. Hendricks has been understood in practice as extending to the discount of all kinds of paper valid in its inception, whether negotiable or not; and that large investments have been made upon that construction. The argument claims too much. If the fact be as supposed, which it is impossible for us to know judicially, the principle upon which practical constructions like the one urged upon us are known to proceed, can scarcely commend them as instances to *480 be safely consulted by courts of justice. The avarice of usurers has always been astute in extending their line of discount. Shortly after it was held that interest might be taken in advance on discounting a bill or note, the practice was extended to paper which had a long time to run ; and it was found that the decisions, unless they were- limited, would open the door to most oppressive usury. The courts, therefore, corrected the general language in which the earlier-judgments had been announced, by confining them to ordinary business paper. It was indeed found that, without such a restriction, the usurer might, in the name of discount, absorb not only the interest but the principal of the loan, to an amount in all cases commensurate with the cupidity of the lender and the wants of the borrower, (Com. on Usury, 87 to 94.)
It would, no doubt, have been much more in conformity with the spirit of the statute, had the courts held that in no case could a sum exceeding lawful interest be received by way of discount. The very practices now urged furnish the best argument against their validity. Every law should be so construed as to prevent its evasion ; a rule which the statute of usury carries upon its face. The reason why such an admonition was inserted is to be found in the history of the statute. At every step of that history, both the legislature and the courts were met by the protean devices of avarice, constantly moving with its hundred fangs through every region of society; obdurate, powerful, fruitful in expedients, watching its prey “ with, an eye that never winked,” and pouncing upon it as “with a wing that never tired.” The legislature was baffled in the effort even to catalogue the mischiefs of such a progress. It finally grouped them under the name of “ legion,” and confided the pursuit and punishment of the whole category to the general administrators of the law. It is unfortunate that, even among them, individual instances plainly belonging to the obnoxious class have sometimes been mistaken for members of an innocent species. Such mistakes encourage usurious practices in a two-fold way; first, by de *481 trading from their moral odium, and secondly, by inducing a hope that legal impunity may be secured under colorings and distinctions, no matter how bungling and even puerile. I forbear to discuss the policy of the usury law, as judges have occasionally done. The law is found in the statute book. If its credit in the eye of political economy were as far depreciated as the sumptuary laws of feudal Europe, even that would furnish no argument against enforcing a subsisting law according to the spirit and intent of its framers.
Courts may, indeed, by a narrow and illiberal course of ad- ’ judication, by a fear of affixing proper names, or by referring things to the jury box which should be dealt with as questions of law, render the statute in question or any other statute weak and inefficient. This is the too common fate of laws made for the suppression not only of usury but of fraud. No relief from individual hardship afforded by such courses, can compensate for the disgrace which they bring upon the general administration of the law; and it would be better if the few cases which give them countenance were at once overruled.
On the whole, I am entirely satisfied with the disposition which the chancellor has made of this case, and hope his decree will be affirmed.
Franklin, Senator.
George Rapelye, the appellant, received of Robert Anderson an assignment of a bond and mortgage made by John Anderson to the respondent, and given to secure the sum of three thousand dollars with interest; for which the appellant paid and advanced the sum of twenty-six hundred dollars, and at the same time took from the respondent a collateral bond executed by himself and Abraham A. Remsen in the penalty of six thousand dollars, with a condition that, in case the mortgagor should pay the amount secured by the bond and mortgage with interest, the same should be void, otherwise to remain in full force and virtue. Upon this statement of facts, a bill was filed in the court of chancery before the vice chancellor of the first circuit, to set aside the assignment and *482 compel the appellant to give up the collateral bond of-Anderson and Retnsen, Upon the ground that the transaction was in violation of the^ statute to prevent usury, and consequently void. The cause was heard before Assistant Vice-Chancellor Hoffman, who dismissed the bill, and, upon appeal to the chancellor, his decision was reversed; and hence the present question.
The principle is well settled, that if a person loan money at a higher rate of interest than seven per cent, per annum, the transaction is usurious and void. But to my mind there is a clear and palpable distinction between the purchase of a chose in action, legal in its inception, and the loaning of money ; and that the principles of law which govern and control the former, are not applicable to and have no binding effect upon the latter.' This distinction has been recognized in many instances' in our own courts, and appears now to be the well settled and established law of the land. In the early case of Brown v. Mott, (7 John. R. 361,) it was said that, if the plaintiff had purchased the note at a price less than its nominal value, he could not have recovered from his immediate endorser more than the amount he actually paid for the same. It is true that, in the case cited, the question of usury was not directly in issue, and consequently the observation was accidental: but it nevertheless shows the opinion of the court as fully as it would have done had the remark been made upon a plea of usury. A similar doctrine was held in the case of Braman v. Hess, (13 John. R. 52,) in which the court said that, where, on the endorsement of a note, the consideration passing between the endorsee and the endorser is less than the amount of the note, the endorsee, in an action against the endorser, can recover no more than the consideration he has actually paid. Again, in the case of Munn v. The Commission Company, (15 John. R. 44,) where the note was valid as between the original parties, 60 that an action could be maintained upon it, it was held, tobe valid also in the hands of an endorsee who had discounted it at a higher rate of interest than seven per cent, per annum, and that *483 he might recover the whole amount against the maker ; but that, as against the endorser, no more could be recovered than the amount actually paid. In the case of Powell v. Waters, (8 Cowen, 669,) the late Chancellor Jones, in delivering the opinion of this court, remarked : “ A note which has been negotiated by the maker, and might, if at maturity, be enforced against him by the holder, may be sold at a greater discount than the rate of seven per cent, per annum. But the note must be perfect and available to the holder, to make it saleable by him. The test is, the right to maintain an action upon it against the parties, if it was then due.” And the late Senator Golden observed in the same case, that a note or security originally given for a legal consideration, could not afterwards become usurious, at whatever rate it might have been purchased or discounted.
Now it is not contended that, as between the mortgagor and mortgagee in the case under consideration, there was any thing which would have prevented the latter from sustaining an action upon the bond, or from selling the mortgaged premises. The bond and mortgage were not tainted with fraud or usury, but were valid and legal contracts which could be enforced. In the case of Cram v. Hendricks, (7 Wend. R. 569,) recently decided by this court, and to which reference was so often made in the course of the argument, it was held, after mature and serious deliberation, most of the cases a bearing upon this point having been collected with great care, that discounting a business note at a rate of interest greater than seven per cent, per annum, was not a usurious transaction ; that a note valid in its inception might be bought and sold as a chattel at its real or supposed value; that the transfer by the payee of a valid, available note, upon which he might maintain an action against the maker and which he parts with beyond the legal rate of interest, is not usurious, although the payee on such transfer endorses the note ; and that, on nonpayment by the maker, the endorsee might maintain an action against the endorser. The case of Rice v. Mather, (3 Wend. R. 62,) recognizes the same doctrine. That was an action brought *484 to recover the sum of $948,50, being the amount due upon a promissory note drawn by E. Mather & Co. in favor of and endorsed by Keeler & Mather, and discounted by the plaintiff at the rate of one per cent, a month. The defence set up was usury ; but the court held that, according to its uniform decisions, this clearly was not a usurious transaction ; that the note was an available instrument in the hands of the original payee ; that there was no usury in its origin, and therefore the purchase or discount of it at a sum less than its face, did not taint the note with usury.
The same doctrine which is applicable to promissory notes and bills of exchange, and which governs and controls actions brought upon them, must, I apprehend, govern and control the judgment of the court in the case now under review. Was this transaction then an absolute sale within the legal construction of the term, or was it a loan of money under the form and character of a sale, merely for the purpose of avoiding the statute against usury, and to be governed by the principles of law applicable to cases of loans 1 Or, to use the language of Senator Beardsley, in the case of Cram v. Hendricks, u what is the real substance of the transaction ? not what is its color and form ; was it a loan, and the intent of the parties to cover usury, or was it an absolute, boiiafide sale 1” The component parts of a loan are a voucher or contract specifying the nature of the transaction, the time of payment or redemption, the rate of interest for the use of the money loaned, and the intention of one to loan and the other to borrow. Nothing appears upon the pleadings in this cause which establishes any such transaction or intention between the contracting parties ; but upon the contrary, the assignment purports to be a bargain and sale of the bond and mortgage of John Anderson to the appellant George Rapelye. No time of redemption is specified, nor rate of interest which is to be paid and received for the money advanced, but it is a simple transfer from one person to another in the ordinary and usual .way of disposing .of bonds and mortgages. It is true, the bill of the respondent *485 charges that it was a loan of money and not a Iona fide sale; but the answer of the appellant repudiates the idea of a loan, and denies absolutely and unequivocally that he did loan or agree to loan to the complainant any sum of money whatever for which the complainant gave to the defendant the bond and mortgage of John Anderson and wife and the collateral bond of Robert Anderson and Abraham A. Rcmsen as security for the repayment of the same by the said Robert Anderson ; but alleges that the said bond and mortgage of John Anderson and wife were purchased by him in good faith, and so sold and assigned to him in consideration of the sum of $2600, which he actually paid and advanced for the same. But he admits that the deed poll of assignment contained a covenant by the complainant that there was then due and owing upon the said bond and mortgage the sum of $3000. There is no testimony in the case which supports the allegation in the bill, or which goes to show that there was any negotiation or agreement between the parties except for a sale of the bond and mortgage. Upon the contrary, one witness swears that the object of Mr. Anderson’s calling upon Mr. Rapelye was to negotiate the sale of the bond and mortgage, and that the subject of conversation between them was in reference to such sale; and, although he was present at several interviews between them, he never heard any thing said in relation to a loan.
But it is contended that this ought to be considered asa loan, in consequence of a collateral bond having been given and received to secure the ultimate payment of the sum of $3000 and interest for which the original bond and mortgage were given, and for which only $2600 had been paid by the appellant. But I am unable to distinguish this case from that of Cram v. Hendricks, or from the still stronger one of Mazuzan v. Mead, (21 Wend. 285,) in which a note of $210 was sold for $200, being a greater discount than legal interest, and the seller guarantied, in express terms, to pay not only the $200 and interest, but the amount payable by the face of the *486 note. Mr. Justice Cowen, in delivering the opinion of the court in that case said, “ a usuriousJmtent is not to be inferred, inasmuch as the plaintiff cannot in legal effect recover and does not in truth seek to recover more than he advanced, with the legal interest. If such were the express agreement at the time, it would clearly take away the. sting of usury; and if that appear upon fhe face of the declaration to be but the legal effect of the guaranty, then the case is the same. Had the defendant simply, endorsed the note, leaving himself to be charged in the usual way, by demand and notice, the transaction would notj, have been usurious.” ,'
If the condition of the bond of guaranty of-Anderson and Rernsen had been, that in case John Anderson, the original obligor, did not pay the sum of $3000 and interest secured by his bond and mortgage, that then and in that case they would,, .it would have presented no stronger case than the endorsement of Cram on the note of Hendricks, or the guaranty mentioned in the case of Mazuzan v. Mead. The condition of this bond, however, is, not that Anderson and Rernsen would pay the sum of $3000 and interest if the obligor John Anderson did not, but that if he did pay that amount, then the bond was to be void, otherwise to remain in full force and virtue : so that upon the principle laid down and decided in the case of Cram v. Hendricks and Mazuzan v. Mead, the amount which could be collected by Rapelye would have been, not the consideration expressed in the assignment, or the amount for which the bond and mortgage of John Anderson were given, but the actual sum received from Rapelye, being $2600, together with the interest which might have accrued thereon from the time of the actual receipt thereof.
The consideration of $3000 being expressed in the assignment, cannot alter the legal construction of this collateral bond of guaranty ; for the question of usury cannot depend upon the ease or difficulty of proving the transaction. The facts render it usurious or not. The difficulty or ease with which those facts can be substantiated or proved does not and ought not to enter *487 •into the question. The true consideration could always he explained by parol testimony; for, as I understand the law, it is a well settled and established rule, that although parol evidence cannot be admitted to contradict, add tó or vary the terms of a will, deed or other instrument in writing, yet it will be received to establish another consideration consistent with the nature of the consideration contained in the deed or instrument. For instance : in the case of a deed purporting to convey property in consideration of money paid, although it would not be admissible to prove that a marriage contract, and not the money, was the inducement or consideration for the conveyance, because that would contradict the deed; yet it would be admissible to prove that a moneyed consideration, greater or less than that contained in the deed, was given for the same. This principle is clearly established in the case of Betts v. The Union Bank of Maryland, (1 Harris & Gill’s Reports, 175,) and, in our own courts, in the cases of Bowen v. Bell, (20 John. Rep. 338,) and Whitbeck v. Whitbeck, (9 Cowen, 266.)
The principle involved in this case is an exceedingly important one, affecting, as it does, property to an immense amount; for transactions similar to this are of almost every day’s occurrence, in which bonds and mortgages are purchased for a .sum less than that for which they were originally given, and transferred from one party to another by assignments containing covenants of guaranty, and in very many instances with collateral bonds similar to the one now under consideration. Such contracts, however, cannot in my opinion be construed into loans of money to be adjudged void on the ground of usury under the decisions to which I have referred, but, according to the spirit and true construction of those cases, must be sanctioned and upheld. I am therefore of the opinion that the assistant vice-chancellor was clearly justified in the decree which he made, and that the decision of the chancellor should be reversed.
Bockee, Senator.
The complainant charges in his bill, that the mortgage against John Anderson was assigned to secure *488 the repayment of a corrupt and usurious loan made by the appellant to him. The answer of the appellant denies all usury, and none is proved, unless it appears on the face of the assignment and bond. The assignment purports, in consideration of the sum of $3000, to assign and transfer a bond and mortgage against John Anderson, with a covenant that there was due on said bond and mortgage the sum of $3000. The actual consideration paid on the assignment, as appears by the testimony of Remsen and the answer of Rapelye, was $2600. So far there is obviously no taint of usury in the transaction. If the appellant collected his money of the mortgagor, he made a good bargain ; and he might lose the whole of it, by reason of prior incumbrances on the mortgaged premises or insufficiency of value, and could have no recourse to Robert Anderson on the covenant in his assignment. But the appellant goes further, and takes from Robert Anderson a bond in the penal sum of $6000, with surety, conditioned that if the mortgagor, John Anderson, should pay the sum of $3000 according to the condition of said mortgage, then the obligation to be void, otherwise to remain in full force. The bond and the assignment are no doubt to be taken together as parts of one transaction, and if there is usury in either, both are vitiated. It is obvious that the arrangement between these parties might be a contrivance to cover a usurious loan. Even a sale of goods may be usurious, as was adjudged by Lord Mansfield in the case of Lowe v. Waller, (2 Douglass, 735,) where the circumstances clearly showed the intention of the parties to cover a usurious loan under the disguise of a sale of goods. The application in that case was for a loan of money, and negotiations for such loan being continued for some length of time, were closed by a sale of goods at a great advance above their value. It was found by the verdict of a jury that the bill given on such sale was usurious, and the verdict was sustained by the court.
The true and only point in this case is, whether the arrangement between these parties was a device to cover a usurious loan. Unconnected with a loan of money or usurious agreement, I suppose any person may buy or sell *489 without violating the statute of usury. He may relieve his necessities by buying dear or selling cheap, and the person with whom he deals will not be punishable for usury. In this case there is no evidence of any agreement between these parties respecting a loan of money. There was no application to borrow, and no offer to lend. There are no circumstances that I can discover in the evidence in the cause, to show the transaction between these parties usurious, unless the bond of guaranty above recited makes it so. Suppose that John Anderson, the mortgagor, had paid to Rapelye the $300.0, with interest, according to the condition of his bond ; from the facts disclosed in this case, would he not be entitled to retain the money as the purchaser and assignee of the bond and mortgage 1 I think an action would not lie in favor of Robert Anderson to recover any part of the mortgage money thus paid. Viewing the case in this aspect, I should hesitate in pronouncing it a case of usury. It seems to be marked and identified as a sale of a mortgage security, not as a loan of money. The guaranty above mentioned is, that the mortgagor, John Anderson, shall pay the $3000. It is not in the alternative that the obligors shall pay that sum. If John Anderson does not pay, the obligors are left merely on the ground of their legal liability. The judgment is entered for the sum of $6000, and the court may direct by endorsement on the execution a collection of the sum equitably due, or, on assessment of damages by a jury, they may award the sum actually paid on the assignment and sale of the mortgage. It may be admitted that, prima facie, the rule of damages would be the sum of $3000, the consideration mentioned in the assignment. So it was in the case of Cram v. Hendricks. Cram stood on the ground of legal liability as general endorser of a promissory note, and the rule of damages against him was, prima facie, the amount of the note. The court, by limiting the amount of the recovery to the actual consideration of the endorsement, refused to give a construction which would render the contract usurious. It cannot be maintained that there is any difference, as regards this question of usury, between the *490 negotiation of bills and notes, and other securities. The case of Cram v. Hendricks, decided in this court, is binding and authoritative, and I cannot discover a hair’s breadth of difference between that case and the present. The case of Yankey v. Lockheart & Burton, cited by the chancellor from the court of appeals in Kentucky, is certainly in direct conflict with the case of Mazuzan v. Mead, decided by the supreme court. In both these cases the consideration was truly stated in the assignment, and was less than the amount of money due. In both cases the agreement on the part of the vendor was expressly to pay, not the amount of the consideration of the assignment, but the amount of the note or security transferred. It appears to me that human ingenuity can point out no difference in principle between the facts of the two cases ; but the decisions are variant. The chancellor seems to have placed an undue reliance on the decision in the case of Yankey v. Lockheart & Burton, which I hold to be of no authority. I cannot think it entitled to any weight, either by way of argument or authority, when it stands the open and direct antagonist of the decisions of our own courts. My opinion is, that the chancellor’s decree should be reversed and the complainant’s bill dismissed.
Huger, Senator.
It is quite certain from all the circumstances, that it was the intention of Rapelye to secure to himself a premium of more than $500 for the use of $2600 for the short period of a little over five months. The whole transaction, to my mind, savors of an intent to accomplish indirectly what the law would not allow to be done directly.' The transaction has very little of the character or semblance of a sale about it. A fraudulent intent to evade the law against usury may be inferred from the insertion of a false consideration in the assignment. At least, a party must be held to intend the necessary effect of his own deliberate acts; and the necessary effect- of this transaction, if allowed, will be to. enable Rapelye to realize a usurious rate of interest for the use of his money.
*491 The lawful interest on the money advanced by Rapelye would have been about eighty-two dollars; bu*, by contrivance, he secured an interest or premium of over live hundred dollars. And how has he done it 1 Not directly, by taking the obligation of Robert Anderson to pay him that interest or premium ; but indirectly, by taking the bond of Robert Anderson and A. A. Remsen, conditioned that the interest or premium shall be paid him by John Anderson, a third person. Should this mode of getting round a statute meet with favor in our courts, it would immediately be adopted as a precedent by those who wish to evade all laws against usury.
In my opinion the decree of the chancellor should be affirmed.
Root, senator, delivered a written opinion, and Foster, senator, an oral opinion, in favor of affirming the chancellor’s decree.
Paige and Platt, senators, delivered oral opinions for re-1 versal.
On the question being put, ££ Shall this decree be reversed"?” the members of the court voted as follows :
For affirmance : Cowen, J., and Senators Bartlit, Clark, Dixon, Ely, Foster, Root, Roger, Scott, Varían and Varney—11.
For reversal: The President, and Senators Bockee, Dickinson, Faulkner, Franklin, Hopkins, Hunt, Nicholas, Paige, Platt, Rhoades and Works—12.
Decree reversed.(a)

 See Suydam v. Westfall, (ante, p. 211,) Ketchum v. Barber, (ante, p. 224, and Seymour and others v. Strong, (ante, p. 255.)